

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable L. A. Woods
State Superintendent of
Public Instruction
Austin, Texas

Dear Sir:

Opinion No. O-1500
Re: Transportation Aid, Ranger
Independent School District

We are in receipt of your letter of August 21, 1939, which reads in part as follows:

"The Ranger Independent School District has more than 800 scholastics. The district qualifies for transportation aid under the nine-mile provision of the Equalization Law, Section 2. There is located within this school district a town of more than 3600 population according to the last preceding Federal census.

"Question: Is the Ranger Independent School District eligible for transportation aid out of the Equalization fund?"

You also state in your letter that for the past three years this district has been paid transportation aid out of the Equalization Fund under the same fact situation but this year some question has come up as to whether this district is entitled to aid under the provisions of Section 2 of House Bill No. 133, being Chapter 60, p. 1972, General and Special Laws of Texas, 2nd Called Session, 45th Legislature, 1937. We understand that the district shows a budgetary need and is otherwise qualified to receive transportation and unless it is excluded by the provisions of Section 2 of the foregoing bill.

Section 2 of House Bill No. 133, Chapter 60, p. 1972, General and Special Laws of Texas, 2nd Called Session, 45th Legislature, 1937, reads as follows:

"Scholastic Population of the District. State aid under the provisions of this Act shall be distributed in such a way as to assist all school districts of not fewer than twenty (20) scholastics and not more than five hundred (500) scholastics, and consolidated and/or rural high school districts which have an average or not more than two hundred (200) scholastics of each original district composing the consolidated and/or rural high school districts unit, and all districts composed of entire counties having a scholastic population of less than five thousand (5,000); provided that schools in sparsely settled counties may be exempt from the minimum restrictions of twenty (20) scholastics, as hereinafter provided; provided that in such cases the district applying for aid shall be levying and collecting the limit of local tax support as provided by general law. Sparsely settled counties shall be defined as those having less than one thousand, four hundred (1,400) scholastic population in the common school districts. It is expressly understood that the provisions and limitations of this section and other sections in this Act do not apply to vocational aid, and aid for crippled children; provided that the minimum and maximum scholastic limits herein provided shall not apply for transportation aid to any school district, containing forty-eight (48) square miles of territory, or more, or which is nine (9) miles or more in length; and provided further that the maximum limitations as to scholastic population herein set forth shall not apply for any type of aid to school districts containing forty-eight (48) square miles of territory or more, or which is nine (9) miles or more in length, provided there is not located in such a district an incorporated city or town having a population of more than thirty-six hundred (3600) inhabitants, according to the last preceding Federal Census." (Underscoring ours)

The legal question to be determined is whether the last proviso in the section quoted above is a qualification or limitation upon the underlined proviso removing scholastic requirements from certain districts with reference to transportation aid.

When construing a statute the primary purpose is to find and determine the intention of the Legislature, and while not always controlling statutory rules of construction may be resorted to as aids in ascertaining the legislative intent. A proviso is substantially an exception. Its natural and appropriate office is to restrain or qualify some preceding matter.

It is stated in 39 Tex. Jur. p. 193 that:

"Generally a proviso is construed in connection with the article or section of which it forms a part, and is to be given effect if reasonably possible, according to the clear meaning of the language used.

"Ordinarily a proviso is limited to the clause which next precedes it and to which it is attached. So where there are successive provisos, the qualifying terms of the last will be understood as referring to the one next preceding. . . ."

Referring now to Section 2 of House Bill No. 135, it will be noted that it first provides that districts may be eligible which have not fewer than 20 scholastics nor more than 300 scholastics, etc. Following this requirement is a proviso exempting schools in sparsely settled counties from the minimum restriction of 20 scholastics. Beginning a new sentence the Act then exempts vocational aid and aid for crippled children from the limitations expressed in this section and then reads:

". . provided that the minimum and maximum scholastic limit herein provided shall not apply for transportation aid to any school district containing 48 square miles of territory, or more, or which is 9 miles or more in length; . . ."

Undoubtedly if the section ended at this point there could be no question but that Ranger Independent School District would be entitled to transportation aid. Separated by a semi-colon, however, the section continues:

". . and provided further that the maximum limitation as to scholastic population herein set forth shall not apply for any type of aid to school districts containing 48 square miles of territory or more or which is 9 miles or more in length, provided there is not located in such a district an incorporated city or town having a population of more than 3600 inhabitants, according to the last preceding Federal Census."

Keeping in mind the foregoing rules of construction, we think that it is significant that the portion of the act last quoted above is separated from that which goes before by a semi-colon and

begins, "and provided further." It will also be noted that this proviso qualifies the maximum scholastic population requirement so that it shall not apply for any type of aid to districts of certain dimension, so that without the succeeding qualifying proviso, all school districts containing more than 48 square miles or which are more than 9 miles in length would be eligible for any type of aid without regard to the maximum scholastic population requirement insofar as this section is concerned. There is added however an additional proviso which limits or qualifies the eligibility of such school districts to receive any type of aid if there is located within such district an incorporated city or town having more than 2600 inhabitants according to the last preceding Federal Census. We think it is also significant that while each of the other provisos are separated by semi-colons, the last proviso is separated from the preceding one only by a comma, indicating that they should be read together.

Taking into consideration the foregoing observations, we are of the opinion that the ordinary rules of construction should be applied, and that the last proviso relating to a district having a city or town with a population of more than 2600 inhabitants, was intended to qualify only the next preceding proviso and was not intended to act as a qualification upon that part of the act which removes the minimum and maximum scholastic limit from certain districts insofar as transportation aid is concerned.

Under the facts stated, it is our opinion that the provisions of Section 2 of House Bill No. 133, Chapter 60, Acts, 45th Legislature, 1937, p. 1972, do not disqualify the Ranger Independent School District from receiving transportation aid. We, therefore, answer your question in the affirmative.

Yours very truly

APPROVED AUG 25, 1939

ATTORNEY GENERAL OF TEXAS

(s) Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

Signed

By

Cecil C. Cammack
Assistant

CCC:N

APPROVED OPINION COMMITTEE
By B.W.B. Chairman